UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-00328-1FL

**United States of America**,

v.

**Ramon Sanmartin, Jr.**,

Defendant.

**Memorandum & Recommendation**

Defendant Ramon San Martin seeks an order from this court suppressing evidence obtained by the Government through the search of a parcel mailed to him by an unidentified person. He also seeks the suppression of any evidence obtained from a cell phone seized at the time of his arrest. Previously, on January 7, 2016, the undersigned magistrate judge recommended that the district court deny Sanmartin's motion to suppress all physical evidence seized from a search of a United States Express Mail Parcel ("parcel") and any evidence recovered from the search of the cellular phone seized subsequent to Sanmartin's arrest (D.E. 24, 26)[1] because Sanmartin did not have a reasonable expectation of privacy in the parcel. D.E. 39. In making that recommendation, the undersigned relied on an affidavit, the Government's assertion, and the defendant's assertion that the parcel was addressed to "Bonilla San Martin" (D.E. 24 at 2; D.E. 24-2 at 4; D.E. 27 at 1). On February 5, 2016, the Government filed a notice stating that it received a copy of the top layer of the parcel's shipping label and determined that the "the original label appears to read 'Ramon San[]Martin'...." D.E. 48 at 2. Afterwards, Sanmartin filed supplemental pleadings. The district court then re-referred Sanmartin's motion to suppress and his motion to seal to the undersigned for further consideration.

---

[1] Sanmartin filed an Amended Motion to Suppress on December 22, 2015 (D.E. 26).

After reviewing the parties' arguments and the applicable law, the undersigned magistrate judge recommends that the district court deny Sanmartin's Motion to Suppress. Sanmartin is not entitled to have the physical evidence obtained from the search of the parcel suppressed because the Government's actions of forwarding the parcel to Greensboro and conducting a dog sniff were not searches or seizures under the Fourth Amendment. Although the Government eventually seized the parcel when it held the parcel beyond the agreed upon delivery time, that seizure was supported by probable cause. Sanmartin is not entitled to suppress any evidence obtained as a result of the search of the cellular phone for those same reasons.

## I.     Background

On August 24, 2015, an unknown person visited a United States Post Office station located within Plaza Las Americas, a shopping mall in San Juan, Puerto Rico. Audio Tr. Mar. 22, 2016 at 2:17:11 to 2:17:48. That person placed into the mail stream a United States Express Mail Parcel ("parcel") addressed to Ramon San Martin, 1000 Airport Blvd., Morrisville, North Carolina. D.E. 48. A postal clerk processed the priority express label, guaranteeing delivery to Ramon San Martin by 3:00 p.m. on August 25, 2015. Audio Tr. at 2:12:40 p.m. to 2:12:47 p.m., 2:18:55 p.m. to 2:19:32 p.m.; Gov't Exh. 6. The postal clerk then placed the parcel into an express mail sack (Audio Tr. at 2:25:00 p.m. to 2:25:13 p.m.), which left the Plaza station for the San Juan main office between 5:00 p.m. and 5:30 p.m that same day (*id.* at 2:24:59 p.m. to 2:226:02 p.m.).

Once the parcel arrived at the San Juan main office, it became part of the outbound interdiction process conducted by Postal Inspector Veronica Martinez. *Id.* at 3:03:20 p.m. to 3:03:32 p.m. Inspector Martinez visually inspected the parcel and noticed that it had a handwritten label. Based upon the handwritten label and the fact that the parcel was being

2

shipped from a known source state for narcotics, Inspector Martinez became suspicious of the parcels' contents. D.E. 24-1 at 5. Apparently believing that the parcel was destined for a location in the Middle District of North Carolina, Martinez called Postal Inspector Angela Pollard in Greensboro, North Carolina to discuss whether Pollard wished to investigate the parcel further.[2] D.E. 24-3 at 2. Pollard answered in the affirmative (*id.*), so Martinez put the parcel into another priority express mail sack, sealed it, and addressed it to Pollard (Audio Tr. at 2:58:39 p.m. to 2:59:30 p.m.). Martinez then placed the parcel on a truck that left the San Juan main office for the airport at approximately 7:00 p.m. that night. *Id.* at 2:28:49 p.m. to 2:28:54 p.m., 3:00:08 p.m. to 3:00:40 p.m.

Pollard picked up the parcel from the Greensboro Processing and Distribution Center in the early morning of August 25, 2015. *Id.* at 3:44:26 p.m. to 3:45:12 p.m. She transported it back to her office (*id.* at 3:44:46 p.m. to 3:44:51 p.m.) and attempted to verify the information on the Express Mail label (D.E. 24-1 at 6). She determined that the recipient's name and the sender's name were not associated with the indicated addresses and arranged for a drug-detecting dog, Peaches, to come to the facility to conduct further investigation. *Id.* at 7. The suspicious parcel was placed in a line up with four other parcels, none of which contained controlled substances. *Id.* Peaches was allowed to walk among the various parcels and alerted to the parcel from Puerto Rico at 8:35 a.m., which indicated that Peaches detected the scent of a controlled substance emanating from the parcel. *Id.*

---

[2] The Government contends that Inspector Martinez contacted her counterpart in Greensboro, which is in the Middle District of North Carolina, because she mistakenly believed that the parcel was headed to Mooresville, North Carolina, located in the Middle District, instead of Morrisville, which is located in the Eastern District of North Carolina.

Subsequently, Pollard submitted an application for a search warrant to a United States Magistrate Judge in the Middle District of North Carolina. *Id.* The Magistrate Judge issued the warrant allowing a search of the parcel on August 26, 2015, at 9:10 a.m. *Id.* at 4.

After transporting it to the Eastern District of North Carolina, postal inspectors opened the parcel and discovered that it contained three vacuum sealed bricks, the contents of which field tested positive for cocaine. D.E. 24-2 at 4. After repackaging the parcel, a postal inspector delivered it to its destination, a Days Inn motel, on August 26, 2015, at approximately 12:48 p.m. *Id.*

Ramon Sanmartin, Jr. retrieved the parcel from the front desk and was immediately taken into custody. *Id.* At the time of his arrest, law enforcement seized a cellular phone from Sanmartin. Although law enforcement subsequently obtained a warrant from a North Carolina Magistrate to search the phone, they were unable to do so because they could not "unlock" the device. *Id.* at 5.

## II. Motion to Suppress

Sanmartin contends that the evidence obtained from the parcel should be suppressed because it was seized and searched without either a warrant or a reasonable, articulable suspicion. Specifically, Sanmartin argues that the Government seized the parcel without reasonable, articulable suspicion when Inspector Martinez forwarded the parcel to Greensboro, and that the Government searched the parcel without reasonable, articulable suspicion when it conducted the dog sniff.[3] In response, the Government argues that its actions were not seizures

---

[3] In his Amended Motion to Suppress, Sanmartin also argues that the detention of the parcel was unreasonable in duration. D.E. 26 at 3. However, he filed his Amended Motion to Suppress after the pretrial deadline of December 11, 2015 and failed to show good cause for his delay in asserting this argument. Accordingly, the court will not address this argument. *See* Fed. R. Civ.

4

under the Fourth Amendment. The court agrees and also determines that the dog sniff was not a search under the Fourth Amendment.

The Fourth Amendment to the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…." U.S. Const. amend. IV. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobson*, 466 U.S. 109, 113 (1984). Sealed parcels, such as the one at issue here, are entitled to protection under the Fourth Amendment. *United States v. Givens*, 733 F.2d 339, 341 (4th Cir. 1984).

The court must first determine at what point Government's actions constituted a search or seizure of Sanmartin's parcel for Fourth Amendment purposes. Sanmartin contends that the Government seized the parcel when Inspectors Martinez and Pollard agreed to remove the parcel from the mail stream and ship it to Greensboro, North Carolina for further investigation. D.E. 24 at 5. The Government contends that there was no seizure until the time Sanmartin expected to receive the parcel had passed, at which time the Government already had both probable cause and reasonable suspicion to seize the parcel. D.E. 27 at 14–15. Thus, the Court must determine at what point the Government's actions constituted a meaningful interference with Sanmartin's possessory interest in the parcel and whether there was a constitutionally appropriate justification for doing so.

---

*Pro.* 12(c)(3); Local Crim. R. 12.1 ("Untimely [pretrial] motions may be summarily disregarded.").

5

Neither the Supreme Court, nor the Fourth Circuit, have addressed the extent of an individual's possessory interest in a parcel shipped through the mail.[4] Numerous other federal courts have agreed with the Government and held that the possessory interest in a parcel is "solely in the package's timely delivery." *United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1160 (9th Cir. 2007); *see also United States v. Demoss*, 279 F.3d 632, 639 (8th Cir. 2002) (Hansen, J. concurring) (stating that defendant's "only possessory interest in the package was timely delivery"); *United States v. LaFrance*, 879 F.2d 1, 7 (1st Cir. 1989) (holding that the possessory interest in a package is in the contractually agreed upon delivery time); *United States v. Jefferson*, 566 F.3d 928, 934–35 (9th Cir. 2009) ("[A]n addressee has no Fourth Amendment possessory interest in a package that has a guaranteed delivery time until such delivery time has passed. Before the guaranteed delivery time, law enforcement may detain such a package for inspection purposes without any Fourth Amendment curtailment."); *United States v. Terriques*, 211 F. Supp. 2d 1137, 1144 (D. Neb. 2002) ("Where the package has been delivered to a common carrier for delivery, the detention does not even begin to interfere with the owner's possessory interest until it delays delivery of the package beyond the contractually agreed upon time."); *United States v. Theriault*, 2001 WL 15531, at *4 (D. Me. Jan. 5, 2001) (questioning whether the Fourth Amendment is implicated when a Sheriff's Deputy removed a package from an air freight conveyor belt to put in a package line-up because the deputy's actions did not delay

---

[4] However, there is a case currently pending at the Fourth Circuit that deals with some of the issues involved in this case. In *United States v. Kent*, No. 2:14-cr-00088, 2015 WL 418135 (S.D.W. Va. Jan. 30, 2015), *appeal docketed*, No. 15-4288 (4th Cir. May 26, 2015). In *Kent*, the appellant asks the Court of Appeals to determine, among other things, whether a postal inspector had reasonable suspicion to remove an express mail parcel that had a handwritten label, was sent from individual to individual, originated in a drug source state, had a name on the return address that did not correspond with the address, and that was of a size not inconsistent with the presence of drugs. Brief for Appellant at 35, *United States v. Kent*, No. 15-4288 (4th Cir. May 26, 2015). The Fourth Circuit heard oral argument on March 24, 2016.

delivery); *United States v. Quiroz*, 57 F. Supp. 2d 805, 816 (D. Minn. 1999) (collecting cases and finding that an interception of a Federal Express package and subsequent dog sniff was not a detention because the process "was completed well prior to the time that the first available Federal Express delivery truck would have left the airport").

The determination that the diversion of a parcel did not constitute a seizure under the Fourth Amendment is based upon the limited possessory interest remaining in an item that has been voluntarily conveyed to third-party for shipping and delivery. When an individual contracts with a third-party to ship an item from point A to point B by a specified time, "the only possessory interest at stake … [is] the contract-based expectancy that the package [will] be delivered to the designated address" by the agreed upon time.[5] *LaFrance*, 879 F.2d at 7. *Cf. United States v. Van Leeuwen*, 397 U.S. 249, 252 (1970) (explaining that governmental officials may not "encumber [the mail's] flow by setting 'administrative officials astride the flow of mail to inspect it, appraise it, write the addressee about it, and await a response before dispatching the mail' to him"); *Maryland v. Macon*, 472 U.S. 463, 469 (1985) (holding that a seizure had not occurred for Fourth Amendment purposes when a business sold magazines to an undercover officer because "the respondent voluntarily transferred any possessory interest he may have had in the magazines to the purchaser upon the receipt of the funds"); 8 C.J.S. *Bailment* § 104 (2016) ("Where the time is fixed by agreement, the bailee must return the article at the time stipulated.").

This interpretation comports with the historical understanding of what constitutes a seizure of inanimate objects. "From the time of the founding to the present, the word 'seizure'

---

[5] The court will presume for the purposes of this motion that both the shipper and the addressee share the same contract-based possessory interest despite the fact that the addressee may not be a party to the contract between the shipper and the Government.

has meant a 'taking possession[.]' For most purposes at common law, the word connoted … actually bringing it within physical control…. A res capable of manual delivery was not seized until 'tak[en] into custody." *California v. Hodari D.*, 499 U.S. 621, 624 (1991). As shipping a parcel through the mail necessarily involves voluntarily relinquishing control of the parcel for a period of time, it is only when the Government's lawful right to possess the parcel has expired that the Fourth Amendment is implicated. *See United States v. Buckner*, 473 F.3d 551, 553–54 (4th Cir. 2007) ("Although the Fourth Amendment generally prohibits warrantless searches … valid consent to seize and search items provides an exception to the usual warrant requirement."); *see also United States v. Neely*, 564 F.3d 346, 350 (4th Cir. 2009) (explaining that an individual may limit the area subject to a consent search). Thus, in the case of a parcel deposited for shipping and delivery by a specified time, a seizure occurs when the Government retains possession of the parcel beyond the agreed upon delivery time.

Given that an individual's possessory interest in a parcel is limited to timely delivery at the specified address, it follows that there is no "protected interest in the particular route the [parcel] takes." *United States v. Bates*, 100 F. Supp. 3d, 77, 85 (D. Mass. 2015); *see also Demoss*, 279 F.3d at 639 (Hansen, J. concurring) ("[Defendant] had no possessory interest in having his package routed on a particular conveyor belt, sorted in a particular area, or stored in any particular sorting bin for a particular amount of time."). Thus, so long as the Government's handling and routing of a parcel does not delay its delivery beyond the agreed upon time, a seizure has not occurred.

Sanmartin expected to receive the parcel by 3:00 p.m. on August 25, 2015. Gov't Exh. 6. The Government's actions occurred well before that expected delivery time as Inspector Martinez forwarded the parcel to Greensboro on August 24, 2015 (D.E. 24-3 at 2) and Inspector

8

Case 5:15-cr-00328-FL   Document 58   Filed 04/01/16   Page 8 of 13

Pollard received the parcel in the morning of August 25, 2015 (*id.*; D.E. 24-1 at 7 (stating that Peaches alerted to the parcel at 8:35 a.m. on August 25, 2015)). The Government's action of diverting the parcel to Greensboro, therefore, did not interfere with Sanmartin's possessory interests in the parcel and were not seizures of property protected by the Fourth Amendment.

Undoubtedly, the Government seized the parcel when it kept the parcel past 3:00 p.m. on August 25, 2015. *See, e.g.*, *Quoc Viet Hoang*, 486 F.3d at 1160. However, that seizure was supported by probable cause because Peaches alerted to the presence of a controlled substance in the parcel. *See Illinois v. Caballes*, 543 U.S. 405, 409–10 (2005) (finding that a dog sniff establishes probable cause that illegal drugs are present); *United States v. Christian*, 452 F. App'x 283, 285 (4th Cir. 2011) (unpublished) (holding that dog sniff is sufficient to establish probable cause). Therefore, the Government did not unlawfully seize the parcel and Sanmartin is not entitled to protection under the Fourth Amendment.

Sanmartin argues, briefly, that a seizure occurred "[o]nce authorities made the decision to exert domination and control over the parcel for their own purposes…." and cites *United States v. Jacobsen*, 466 U.S. 109 (1984) and *United States v. Vasquez*, 213 F.3d 425 (8th Cir. 2000) in support of this proposition. D.E. 26 at 2. However, both of those cases are factually distinct from this case in that they involved the Government exerting dominion and control over parcels sent through a private delivery service. *Jacobsen*, 466 U.S. at 120 n.18 ("Both the Magistrate and the District Court found that the agents took custody of the package from Federal Express after they arrived."); *Vasquez*, 213 F.3d at 426. Here, the Government and, specifically, the Postal Service, retained exclusive possession and control of the parcel from the time it was mailed in Puerto Rico to the time it was delivered in Morrisville.

9

Additionally, in *Vasquez*, the Court of Appeals affirmed the district court's decision to deny the motion to suppress because "the officers' actions in examining the outside of the package and then subjecting the package to a dog sniff as it sat at the rear of the delivery truck do not constitute a detention requiring a reasonable, articulable suspicion because, at that point, the officers had not delayed or otherwise interfered with the normal processing of the package." *Vasquez*, 213 F.3d at 426. Of course, this begs the question of what qualifies as interference with the "normal processing of the package." From the facts of the case and the cases cited by the Eight Circuit in support of this proposition, it involves interference with the timely delivery of the parcel. In *Vasquez*, "the detention occurred when the officers removed the package from the stream of mail in response to the dog's alert." *Id.* at 427. Removal of the parcel from the mail stream involved setting the parcel aside, obtaining a warrant, searching the parcel, and arranging for a controlled delivery. *Id.* at 426. Moreover, both of the cases the Eighth Circuit referred to when determining whether Government had interfered with the normal processing of the parcel, *United States v. Harvey*, 961 F.2d 1361, 1363–64 (8th Cir. 1992) and *United States v. Ward*, 144 F.3d 1024, 1032–33 (7th Cir. 1998), relied heavily on whether an inspection of luggage delayed the luggage's timely arrival at its final destination. *See Harvey*, 961 F.2d at 163–64 (finding that removal of luggage from an overhead baggage area did not constitute a seizure because, among other reasons, "the temporary removal of the bags caused no delay to appellants' travel"); *Ward*, 144 F.3d at 1033 (explaining that a seizure may have occurred if law enforcement's actions would have required placing the bag on a later bus, "thus interfering with [the owner's] contractually-based expectation that he would regain possession of the bag at a particular time"). Thus, even if *Vasquez* was binding on this court, it does not appear that its reasoning would require suppression of evidence obtained from the parcel.

10

The Fourth Amendment protects both the sender and recipient of a parcel from Government action that meaningfully interferes with their possessory interest in that parcel. However, when a parcel is deposited with a third-party for shipping and delivery, that possessory interest is limited to the contract-based expectation that the parcel will be delivered to the specified address by the agreed upon time. Here, the Government's decision to ship the parcel to Greensboro, North Carolina and conduct a dog sniff did not meaningfully interfere with Sanmartin's possessory interest in the parcel because these actions occurred well before the 3:00 p.m. delivery deadline. Although a seizure occurred when the delivery time passed without delivery taking place, at that point, the Government had probable cause to seize the parcel due to the positive alert by a drug dog. Therefore, the Government's actions with respect to the parcel did not violate the Fourth Amendment and Sanmartin's motion to suppress evidence obtained from the parcel should be denied.

### B. Canine Sniff of the Parcel

Sanmartin next argues that the dog sniff was an unlawful search because it was not supported by reasonable, articulable suspicion. However, a dog sniff is not a search. *See Caballes*, 543 U.S. at 409; *see also United States v. McFarley*, 991 F.2d 1188, 1192 (4th Cir. 1993) ("[T]he dog sniff itself is not a search."). Accordingly, the Government did not unlawfully search the parcel by conducting a dog sniff and Sanmartin is not entitled to protection under the Fourth Amendment.

Sanmartin asserts that the Fourth Circuit Court of Appeals recently held in *United States v. Williams*, 808 F.3d 238 (4th Cir. 2015), that a police officer cannot conduct a dog sniff without reasonable, articulable suspicion of criminal activity. This is incorrect. The Fourth Circuit actually held that an officer must have reasonable, articulable suspicion of criminal activity in

11

Case 5:15-cr-00328-FL   Document 58   Filed 04/01/16   Page 11 of 13

order to extend a traffic stop beyond its normal length to conduct a dog sniff. *Id.* at 245–47. *Williams* does not compel a different conclusion in this case. Therefore, it is recommended that Sanmartin's request to suppress evidence obtained from the cell phone be denied.

### C. Suppression of Information Gained from the Cell Phone

Sanmartin's sole argument regarding the cellular phone is that it should be suppressed because it was the fruit of the illegal search and seizure of the parcel. In light of the court's determination that the Government's actions regarding the parcel did not violate the Fourth Amendment, there is no reason to order suppression of the cell phone evidence. The court would also note that the Government represented to the court that it has been unable to obtain any data from the phone. Therefore, it is recommended that Sanmartin's request to suppress evidence obtained from the cell phone be denied.

## III. Conclusion

Based upon the foregoing, the undersigned recommends that the district court deny Sanmartin's motion to suppress evidence obtained from the search of the parcel and from the search of the cellular phone (D.E. 24, 26).

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. §

12

Case 5:15-cr-00328-FL   Document 58   Filed 04/01/16   Page 12 of 13

636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846–47 (4th Cir. 1985).**

Dated: April 1, 2016

_Robert T. Numbers II_
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE