IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CR-328-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | ORDER |
| RAMON SANMARTIN, JR., | ) | |
| Defendant. | ) | |

In this case set for jury selection later today, with trial testimony commencing Monday, the court now takes up defendant's motions to exclude evidence of invocation of his Fifth and Sixth Amendment rights, (DE 75), and evidence of his post-Miranda statements to law enforcement officers, (DE 76).

## BACKGROUND

The relevant facts, as described by defendant, are as follows. Following his arrest in the hotel lobby, defendant received a Miranda warning, invoked his right to counsel, was handcuffed, and led into the hotel's breakfast room. While in the room, officer Aaron Singh asked defendant whether he had any prior arrests, and defendant replied that he had been arrested for everything but murder. Later, while being processed into custody at the Wake County Detention Center, officer James Smith asked defendant if he had any tattoos. Defendant replied that he did, and showed his tattoos to Smith. Next, Smith asked whether defendant was affiliated with any gangs. Defendant replied that he was a member of "Latin King's Miami 305."

COURT'S DISCUSSION

A.  Invocation of Fifth and Sixth Amendment Rights (DE 75)

In this motion, defendant seeks to exclude "any evidence . . . [of] having exercised his constitutional rights to have an attorney assist him and to remain silent." (DE 75). In response, the government agrees "not to elicit testimony regarding the defendant's [post-Miranda] silence during its case-in-chief," but "requests that it be able to present permissible impeachment testimony if and when the defendant testifies." (DE 82, 4–5).

The government's limited request to present impeachment testimony—if defendant testifies to certain issues—is allowable. While post-Miranda silence cannot be used to prove guilt, see Doyle v. Ohio, 426 U.S. 610, 619 (1976), the government may elicit impeachment testimony "to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version at the time of arrest." United States v. Carter, 237 F. App'x 886, 887 (4th Cir. 2007). In addition, the government "may also question a defendant about his post-arrest silence for the purpose of rebutting the impression that he cooperated with law enforcement authorities." Id. at 887–88 (permitting the government to present contradictory evidence where defendant sought to create the impression that he "did 'everything' the officers asked, and voluntarily answered their questions").

B.  Post-Miranda Statements (DE 76)

In this motion, again with reliance on his Fifth and Sixth Amendment rights, defendant seeks to exclude "any evidence" of his statements made to officers following his arrest. (DE 76). In response, the government agrees "that it will not seek to introduce the defendant's statement regarding his prior arrests at trial," but requests that "if defendant testifies regarding his post-arrest

2

statements, the Government should be permitted to impeach him on any inconsistent statements." (DE 82, 4–5). In addition, the government argues that defendant's admission of his gang affiliation is admissible pursuant to the "routine booking question" exception. (Id. at 5).

As it relates to the government's impeachment argument, Federal Rule of Evidence 613 provides, in relevant part: "Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." The government's request that under this rule it be permitted to impeach defendant on inconsistent statements, if his testimony is inconsistent with his post-arrest statements, is allowable. See Fed. R. Evid. 613(b).

Defendant's statement concerning his gang affiliation falls within "an exception to Miranda's coverage for routine booking questions 'securing biographical data necessary to complete booking or pretrial services.'" See United States v. D'Anjou, 16 F.3d 604, 608 (4th Cir. 1994) (quoting Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990)). In D'Anjou, the questions posed included what the court described as "standard background information concerning D'Anjou's name, citizenship, place of birth, address, and lengthy of time in Charlotte," to which he responded falsely. Id.

More recently, the Eighth and Ninth Circuit Courts of Appeals have applied this exception also to questions regarding gang affiliation, particularly as it relates to concerns for inmate safety. See United States v. Bowie, 618 F.3d 802 (8th Cir. 2010); United States v. Washington, 462 F.3d 1124, 1132–33 (9th Cir. 2006); see also United States v. Walton, No. 1:12-CR-395-CAP, 2014 WL 3519176, at *14 (N.D. Ga. July 15, 2014) (holding the same). While faced with a similar issue, concerning a defendant's un-Mirandized statement of membership in MS-13, the Fourth Circuit in an unpublished opinion declined to decide "whether routine booking questions that also incriminate

the defendant fall under the 'booking question' exception." United States v. Teran, 496 F. App'x 287, 291 (4th Cir. 2012) (describing the issue as one of first impression, and instead admitting defendant's gang affiliation statement under the independent source doctrine where defendant's gang affiliation was available from other sources).

Here, the government asserts that officer Smith's questions to defendant were part of a standard booking procedure aimed, in part, at addressing safety concerns. This is in keeping with the rationale justifying other courts' application of the "routine booking question" exception to questions about gang affiliation. See, e.g., Washington, 462 F.3d at 1133 ("[A]gents routinely obtain gang moniker and gang affiliation information . . . in order to ensure prisoner safety. The question regarding [defendant]'s gang moniker therefore was a routine booking question."). Accordingly, where defendant's admission of his gang affiliation falls under the "routine booking question" exception to Miranda, the court denies the relief requested.

CONCLUSION

In accordance with the foregoing, the court DENIES defendant's motion to exclude "any evidence" of his having invoked his rights under the Fifth and Sixth Amendments, where impeachment of defendant's testimony may be permissible depending upon whether he testifies and the nature of his testimony. The government's agreement not to elicit during its case-in-chief evidence of defendant's invocation of his constitutional rights is evidenced upon the record. The court DENIES defendant's motion to exclude "any evidence" of defendant's post-Miranda statements to law enforcement officers, where the government may be permitted to impeach defendant on inconsistent statements regarding prior arrests if his testimony is inconsistent with his post-Miranda statements on that subject, and where defendant's statement concerning his gang

4

affiliation is admissible. The government's agreement also not to introduce in its case-in-chief defendant's statements regarding prior arrests similarly is evidenced upon the record of this case.

SO ORDERED, this the 26th day of August, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge